UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN ARNAZ WHALEY,

      Petitioner,

                              Case No. 2:11-cv-10289

v.

                              Hon. Patrick J. Duggan

DEBRA SCUTT,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This is a *pro se* habeas corpus action brought by a state prisoner pursuant to

28 U.S.C. § 2254.  Petitioner Kevin Arnaz Whaley, a Michigan Department of

Corrections prisoner currently confined at the Bellamy Creek Correctional Facility

in Ionia, Michigan, challenges his convictions for unarmed robbery, Michigan

Compiled Laws § 750.530, and being a fourth habitual offender, Michigan

Compiled Laws § 769.12.  For the reasons set forth herein, the petition for writ of

habeas corpus is denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.    Circumstances Surrounding the Commission of the Underlying Offense

The underlying convictions in this case arose from an incident on November

15, 2002.  On that day, Carla McWright, the manager of a Kentucky Fried Chicken

in Ferndale, Michigan, left the restaurant in order to make a bank deposit and thus fulfill one of her job responsibilities.  Carrying approximately $3,000 in a deposit bag hidden in her sleeve, Ms. McWright walked out of the restaurant and took approximately fifteen steps to her vehicle, which was parked in the restaurant's parking lot.  (12/10/07 Tr. at 152-154, 158-60, 172, 175.)

As the above described events were taking place, a nearby resident named Jimmy Shirley testified that he was crossing the street and he noticed an African-American man standing by the wall bordering the parking lot of the Kentucky Fried Chicken.  Although during the daylight hours, Mr. Shirley was too far to see the man's face.  He did, however, take note of the fact that the man, who was dressed in a black jacket and black pants, went from standing upright to crouching down by the wall.  (*Id.* at 189-90, 192-94, 196, 199.)

Ms. McWright testified that as she opened her car door, she noticed a man approaching her.  This man was dressed in all black and was wearing a mask or skullcap over his face.  The man attacked Ms. McWright and a struggle between the two ensued.  Ms. McWright testified that during this struggle, the man was on top of her with his hands around her neck choking her and that the man made repeated demands to "[g]ive me the money, bitch."  Ms. McWright denied that she had any money and continued to physically struggle with the man.  At one point, Ms. McWright managed to remove the object covering the man's face but the man

2

covered her eyes with his hand such that she was unable to view him.  With one hand covering Ms. McWright's face and the other around her neck, the man continued his demands for the money.  Fearful that her assailant would kill her, Ms. McWright eventually gave him the deposit bag, at which point he ran off.  Ms. McWright never got a good look at the perpetrator and she testified that she did not know if Petitioner was the man who attacked her or not.  (*Id.* at 161-62, 166, 169, 177-79, 181, 184.)

After the robbery, Ms. McWright went back inside the restaurant and called the police, who responded quickly.  (*Id.* at 167-68).  As Ms. McWright, who was visibly shaken, was talking with the police, one of the officers noticed blood on her hands and jacket.  (*Id.* at 171; 12/11/07 Tr. at 28-29, 44-45, 56.)  After realizing that it was not her blood, a police technician swabbed Ms. McWright's hands for blood samples.  (12/10/07 Tr. at 169-70, 172-73; 12/11/07 Tr. at 25-26, 29-33.)

A forensic scientist at the Michigan State Police (MSP) Crime Lab in Sterling Heights examined the samples that had been taken from Ms. McWright and confirmed that the substance was blood. (12/10/07 Tr. at 208-09, 212-13.) The samples were sent to the Northville MSP lab for DNA testing in July of 2004. (*Id.* at 213, 225-26, 247.)  A forensic biologist at the MSP Crime Lab in Northville developed a DNA profile from the blood sample that had been obtained from Ms. McWright's hands.  The blood was determined to have come from an unidentified

3

male donor and the DNA profile was entered into the FBI's Combined DNA Index System (CODIS) database system. (*Id.* at 245-50.)

In November of 2004, the CODIS database showed a "hit," that is, a person whose DNA profile matched the sample taken from Ms. McWright. That person was Petitioner. The MSP crime lab informed the Ferndale Police about this match in November of 2004. (12/10/07 Tr. at 250-52; 12/11/07 Tr. at 63.)

In order to verify or corroborate the CODIS match, the Ferndale police obtained a DNA sample from Petitioner in December of 2004.[1] The MSP biologist testified that she examined the known sample of petitioner's DNA and it matched the profile derived from the bloodstains on the victim's hands. The expert testified that the odds of a match in the African-American population were 1 in 156.4 quadrillion. (12/10/07 Tr. at 250-55, 258, 282-83; 12/11/07 Tr. at 64-66.)

Petitioner requested that the DNA evidence be examined by an independent DNA expert, Dr. Marco Scarpetta. After reviewing the DNA evidence and the tests that had been performed by the MSP crime lab, Dr. Scarpetta concluded that proper procedures had been used by the State Police and that the result was correct. (12/11/07 Tr. at 9-15.)

## B.    Procedural Posture

---

[1] Due to concerns about the circumstances under which this DNA sample was obtained, a Michigan trial court issued an order requiring that Petitioner be given a second DNA test.

4

In January 2006, following a trial in the Oakland County Circuit Court, a jury convicted Petitioner of unarmed robbery, in violation of Michigan Compiled Laws § 750.530, and being a fourth habitual offender, Michigan Compiled Laws § 769.12. The trial judge subsequently sentenced Petitioner to 264 months to 50 years in prison. Upon Petitioner's June 6, 2007 motion, the trial judge granted Petitioner a new trial finding that Petitioner had been deprived of his constitutional right to the effective assistance of counsel.

Following his retrial in late 2007, a different Oakland County Circuit Court jury convicted Petitioner of the same offenses. Petitioner was resentenced by the same judge, as a fourth habitual offender, Michigan Compiled Laws § 769.12, to 342 month to 60 years in prisoner for the unarmed robbery conviction.

Petitioner, through counsel, then filed a claim of appeal in the Michigan Court of Appeals claiming (1) that the trial court violated Petitioner's due process rights by refusing to grant an evidentiary hearing on a motion to suppress the DNA evidence and (2) that the trial court imposed an invalid sentence on Petitioner following his retrial. In addition to counsel's brief, Petitioner filed a Standard 4 Supplemental Brief on his own behalf in which he listed additional claims related to his speedy trial rights and his lack of access to the State's evidence. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished per curiam opinion. *People v. Whaley*, No. 283712, 2009 WL

5

1693463 (Mich. Ct. App. June 16, 2009). The Michigan Supreme Court subsequently denied Petitioner's application for leave to appeal. *People v. Whaley*, 485 Mich. 1009, 775 N.W.2d 792 (2009) (unpublished table decision).

Petitioner then filed a post-conviction motion for relief from judgment with the trial court raising the following claims: (1) ineffective assistance of counsel; (2) denial of confrontation clause right; (3) violation of speedy trial right; (4) invalidity of sentence; and (5) that the state forced Petitioner to appear at trial in prison clothing thus violating his due process and equal protection rights. The trial court found that Petitioner's pleading presented different claims in the body than in the headings and denied his motion because the claims were either previously raised on direct appeal, were procedurally defaulted under Michigan Court Rule 6.508(D)(3), or lacked merit. *People v. Whaley,* No. 05-202404-FH (Oakland Cnty. Cir. Ct. Sept. 23, 2010).

Instead of immediately seeking appellate review of this denial, Petitioner filed a petition for writ of habeas corpus with this Court. (ECF No. 1.) The Court subsequently granted Petitioner's motion to hold the petition in abeyance so that Petitioner could exhaust the claims raised in his motion for relief from judgment in the state appellate courts. *Whaley v. Scutt,* No. 2:11-cv-10289, 2011 WL 1561080 (E.D. Mich. April 25, 2011).

6

Petitioner then returned to the state courts and filed an application for leave to appeal his motion for relief from judgment in the Michigan Court of Appeals raising the following claims: (1) the trial court violated Petitioner's due process rights by refusing to grant an evidentiary hearing on a motion to suppress the DNA evidence; (2) the trial court imposed an invalid sentence on Petitioner following his retrial; (3) ineffective assistance of counsel; and (4) the state forced Petitioner to appear at trial in prison clothing thus violating his due process and equal protection rights.  The Michigan Court of Appeals dismissed the application for leave to appeal without prejudice "for failure to pursue the case in conformity with the rules."  *People v. Whaley,* No. 304732 (Mich. Ct. App. Nov. 8, 2011) (citing Mich. Ct. R. 7.201(B)(3) and  Mich. Ct. R. 7.216(A)(10)).  Specifically, Petitioner failed to provide the Michigan Court of Appeals with copies of the opinion and order appealed from and proof of service of the application and motion to waive fees on the Oakland County Prosecutor.  *Id.*  Petitioner's motion for reconsideration was denied thereafter.  *People v. Whaley*, No. 304732 (Mich. Ct. App. Jan. 19, 2012).

Rather than re-filing an application for leave to appeal with the Michigan Court of Appeals that conformed to the court rules, Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Whaley*, 493 Mich. 868, 821 N.W.2d 560 (2012) (unpublished table decision).

On January 23, 2013, this Court granted Petitioner's motion to lift the stay and permitted him to file an amended habeas petition.  (Am. Pet., ECF No. 10.) The claims raised by Petitioner in his original and amended habeas petitions appear to overlap and/or are duplicative.  While far from a model of clarity,[2] Petitioner appears to be raising the following claims:

I.     Petitioner was denied his constitutional right to due process of law when the trial court refused to grant an evidentiary hearing based upon defense counsel's motion to suppress the evidence where petitioner alleged in his sworn affidavit that the physical DNA evidence seized from him was against his will and without a warrant.

II.    Petitioner's Fourth Amendment rights were violated when he was illegally and unlawfully arrested without a warrant and when he was forced to provide a DNA sample against his will.

III.    The trial court imposed an invalid sentence upon petitioner due to (A) the trial court upwardly departing from the sentencing guidelines without articulating substantial and compelling reasons that were objective and verifiable, (B) the trial court's sentence is vindictive, and (C) the trial court relied upon inaccurate information, thereby depriving petitioner of his constitutional right to due process of law.

IV.    The prosecutor committed misconduct when she failed to preserve exculpatory evidence.

V.    Petitioner was denied the effective assistance of trial and appellate counsel which violated his constitutional rights.

---

[2] Petitioner's Amended Application for Writ of Habeas Corpus lists four grounds for relief (grounds I-II, IV-V).  (ECF No. 10, Pg ID 99-100.)  Petitioner's Memorandum of Law in Support, however, raises five grounds for relief (grounds I, III-VI).  (*Id.* at Pg ID 103.)

VI.   Petitioner was improperly forced to wear identifiable prison clothing and ankle and wrist restraints at trial and in the presence of the jury.

Respondent responded to Petitioner's application on March 22, 2013, (ECF No. 14), and filed the Rule 5 materials on March 26, 2013, (ECF No. 15).

## STANDARD OF REVIEW

Petitioner's habeas petition is subject to review pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214. In order to grant relief, this Court must conclude that the Michigan court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has fleshed out the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1). "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that]

9

precedent." *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (alterations in

original) (internal quotation marks omitted)).  Alternatively, "[i]f the state court

identifies the correct governing legal principle . . . , habeas relief is available under

the unreasonable application clause if the state court unreasonably applies that

principle to the facts of the prisoner's case or unreasonably extends or

unreasonably refuses to extend a legal principle from the Supreme Court precedent

to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal

quotation marks and alterations omitted); *Williams*, 529 U.S. at 409, 120 S. Ct. at

1521.  A federal court may not find a state court's application of Supreme Court

precedent unreasonable if it is merely "incorrect or erroneous.  [Rather, t]he state

court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins*

*v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

As suggested by the above-quoted language, AEDPA's standard of review is

"difficult to meet . . . [as it is a] highly deferential standard." *Cullen v. Pinholster*,

563 U.S. __, 131 S. Ct. 1388, 1398 (2011).   In fact, "[a] state court's

determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 786 (2011) (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2150 (2004) (per

curiam)). Principles of federalism, comity, and parity between the state and federal court systems animate this deference: as the Supreme Court has explained, "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring in judgment)).

## III.   ANALYSIS

### A.   Petitioner's Fourth Amendment Claims

Petitioner raises two Fourth Amendment arguments in his petition. First, Petitioner claims that his right to be free from unreasonable seizures was violated when police apprehended him without lawful authority and seized his DNA by "force and fraud." (Am. Pet. ECF No. 10, Pg ID 99.) According to this argument, the state court's admission of the DNA evidence therefore violated the

exclusionary rule.  Petitioner separately argues that the state court's failure to

accord him an evidentiary hearing violated his due process rights.  (*Id.*)

Federal habeas corpus review of a state prisoner's illegal search or seizure

claim is barred "where the State has provided an opportunity for full and fair

litigation of a Fourth Amendment claim[.]"  *Stone v. Powell*, 428 U.S. 465, 481, 96

S. Ct. 3037, 3046 (1976).  This is because "the Constitution does not require that a

state prisoner be granted federal habeas corpus relief on the ground that evidence

obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.*

In articulating its logic for so holding, the Supreme Court provided two

explanations:

> One, the key purpose of federal habeas corpus is to free
> innocent prisoners.  But whether an investigation violated the
> Fourth Amendment has no bearing on whether the defendant is
> guilty. Two, exclusion is a prudential deterrent prescribed by
> the courts, not a personal right guaranteed by the Constitution.
> Any deterrence produced by an additional layer of habeas
> review is small, but the cost of undoing final convictions is
> great.

*Good v. Berghuis*, __ F.3d __, No. 12-1428, 2013 WL 4767183, at *1 (6th Cir.

Sept. 6, 2013) (slip op.) (Sutton, J.) (internal citations omitted).

Given the rule announced in *Stone*, the Court must determine whether

Petitioner received "the opportunity for full and fair consideration" of his Fourth

Amendment claim in the state courts.  *Stone*, 428 U.S. at 486, 96 S. Ct. at 3048.

Petitioner appears to argue that he did not receive such an opportunity because the

12

state court declined to hold an evidentiary hearing on his suppression motion.  This argument, however, misapprehends "[j]ust what kind of 'opportunity' [*Stone*] contemplates[.]"  *Good*, No. 12-1428, 2013 WL 4767183, at *1.

As the United States Court of Appeals for the Sixth Circuit recently clarified, the *Stone* "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim."  *Id.* at *2.  Stated differently, the state must provide, in the abstract, a mechanism by which a petitioner could raise a Fourth Amendment claim, and the presentation of that claim must not have been frustrated by a failure of that mechanism.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses more than an evidentiary hearing in the trial court.  It also includes corrective action available through the appellate process on direct review of the conviction. *See Rashad v. Lafler,* 675 F.3d 564, 570 (6th Cir. 2012) (petitioner had ample opportunities in state court to present Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v.*

*Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004) (petitioner's Fourth

Amendment claim was not cognizable on habeas review, even though the

petitioner did not challenge the legality of his arrest prior to trial, where the

petitioner first raised the issue in a post-trial motion and then on direct appeal and

was denied relief).

"In the absence of a sham proceeding, there is no need to ask whether the

state court conducted an evidentiary hearing or to inquire otherwise into the rigor

of the state judiciary's procedures for resolving the claim." *Good*, No. 12-1428,

2013 WL 4767183, at *2.  Thus, the relevant inquiry is whether a habeas

petitioner had an opportunity to litigate his claims, not whether he in fact did so or

even whether the Fourth Amendment claim was correctly decided.  Indeed, under

*Stone*, the correctness of a state court's conclusions regarding a Fourth

Amendment claim "is simply irrelevant."  *Brown v. Berghuis,* 638 F. Supp. 2d 795,

812 (E.D. Mich. 2009).

In the instant case, Petitioner raised his Fourth Amendment claim before the

state trial court and the Michigan appellate courts.  Moreover, all material facts

were before the state courts on direct review.  Because Petitioner was afforded a

full and fair opportunity – an opportunity he seized – to present his case regarding

the validity of the seizure of his DNA, *Stone* precludes this Court's consideration

14

of his Fourth Amendment claim and Petitioner is not entitled to habeas relief on this basis.

To the extent Petitioner argues that the state court's failure to accord him an evidentiary hearing violated his rights under the Due Process Clause of the Fourteenth Amendment, this argument does not overcome the AEDPA hurdle.  In the state trial court, Petitioner moved for a *Walker*[3] hearing, arguing that an evidentiary hearing should be conducted on the circumstances surrounding the taking of the initial DNA sample so that the court could assess whether Petitioner voluntarily consented to give the sample.  Because the trial court had already ordered that Petitioner submit to another DNA test, the court denied Petitioner's request for an evidentiary hearing as moot.  On appeal, the Michigan Court of Appeals noted that the issue was not actually moot but further noted that because Petitioner eventually complied with the court's order to submit to a new DNA test and that DNA test produced the same results as the first, any error in denying the motion for an evidentiary hearing was harmless.  *People v. Whaley*, No. 283712, 2009 WL 1693463 (Mich. Ct. App. June 16, 2009).

Similar to the claim the Sixth Circuit rejected in *Good*, Petitioner has not identified any Supreme Court precedent "establishing that the Due Process Clause *ever* requires an evidentiary hearing on a Fourth Amendment suppression motion,

---

[3] *People v. Walker (On Rehearing)*, 374 Mich. 331, 132 N.W.2d 87 (1965).

let alone establishing that a hearing was required under the circumstances of his case." *Good*, No. 12-1428, 2013 WL 4767183, at *4 (emphasis in original). Without identifying any such case, Petitioner cannot show that the state court's holding was contrary to or involved an unreasonable application of Supreme Court precedent. As Judge Sutton suggested in *Good*, Petitioner's "best case" is *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964), "but even that is far afield." *Good*, No. 12-1428, 2013 WL 4767183, at *1. In *Jackson*, the Supreme Court held that criminal defendants seeking to suppress allegedly involuntary statements are sometimes entitled to an evidentiary hearing. *Jackson*, 378 U.S. at 392, 84 S. Ct. at 1789. However, "evidence obtained in violation of the Fourth Amendment is different from confessions obtained in violation of the Fifth." *Good*, No. 12-1428, 2013 WL 4767183, at *4. By way of illustration, "a confession is unreliable if it is involuntary, but tangible evidence remains just as reliable even when discovered in violation of the Fourth Amendment." *Id.*

In this case, Petitioner ultimately submitted to a second DNA test pursuant to a trial court order. This DNA test produced the same results as the initial DNA test that Petitioner challenges. While the Court does not condone what transpired with respect to the first DNA test – a test that Respondent admits was conducted under questionable circumstances – the Michigan Court of Appeals' analysis finding harmless error from the admission of the results of the first test is neither

16

contrary to nor involved an unreasonable application of Supreme Court precedent. As such, Petitioner's claim is not cognizable on habeas review.

## B.    Petitioner's Sentencing Claims

Petitioner asserts that the trial court's sentence is invalid and provides several arguments in support of his position. Petitioner first contends that the sentencing judge's upward departure from the sentencing guidelines range was improper because the judge imposed a 342-month sentence following retrial without articulating substantial and compelling reasons that were objective and verifiable. Petitioner also argues that the trial court vindictively increased his sentence following retrial. The Court addresses these arguments in turn.

Petitioner first challenges the trial court's upward departure from the Michigan sentencing guidelines. In conducting habeas review, "it is not the province of the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Rather, federal courts are limited to deciding whether a particular conviction was secured in contravention to federal law. *Id.* at 68, 112 S. Ct. at 480. Thus, violations of state law or procedure that do not infringe specific constitutional protections are not cognizable under the AEDPA. *Id.* at 67, 112 S. Ct. at 480 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (quotation marks and citation omitted).

17

Petitioner's claim regarding the misapplication of Michigan's sentencing guidelines is a state law claim that is not cognizable on federal habeas review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) (affirming lower court decision that petitioner's challenges to the state trial court's application of Michigan's sentencing guidelines raised issues of state law not cognizable on habeas review); *Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003) (explaining that a state court's alleged misinterpretation or misapplication of state sentencing guidelines "is a matter of state concern only").  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief.  *Id.*

The second challenge Petitioner asserts with respect to his sentence is that the trial court acted vindictively in resentencing him.  At the conclusion of the first trial, the trial court sentenced Petitioner to 264 months to 50 years.  Following Petitioner's retrial, the court sentenced him to 342 months to 60 years.[4]

Due process of law mandates that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence

---

[4] The Michigan sentencing range for a fourth habitual offender convicted of unarmed robbery is 62 to 228 months.

he receives after a new trial." *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S. Ct. 2072, 2080 (1969). To prevent actual vindictiveness from entering into a sentencing decision, the Supreme Court fashioned a prophylactic rule which states that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" on the record. *Id.* at 726, 89 S. Ct. at 2081. Courts have interpreted this rule to apply "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin,* 457 U.S. 368, 374, 102 S. Ct. 2485, 2489 (1982). However, where there is no reasonable likelihood that the increased sentence is the product of actual vindictiveness on the part of the sentencing authority, the burden remains upon the defendant to prove actual vindictiveness in the sentencing decision. *Alabama v. Smith,* 490 U.S. 794, 799-800, 109 S. Ct. 2201, 2205 (1989).

Petitioner is unable to show that the state court's resolution of his vindictive resentencing claim was contrary to or involved an unreasonable application of established Supreme Court precedent. As the Michigan Court of Appeals explained in affirming Petitioner's conviction and sentence on direct review, the trial court set forth five reasons for departing from the guidelines range: (1) the brutality of the offense, (2) eight prison misconduct tickets, (3) defendant's dishonesty to the court regarding the quality of his attorney's performance, (4) an

19

"astronomical" quantum of proof, and (5) unaccounted for prior record variable points. *People v. Whaley*, No. 283712, 2009 WL 1693463 (Mich. Ct. App. June 16, 2009). The Michigan Court of Appeals then noted that three of these reasons for upwardly departing were substantial and compelling and based on objective and verifiable information. *Id.* (referring to the first, second, and fifth justifications). Because the trial court had stated, on the record, that any two of the listed five reasons would have caused the court to impose the increased sentence, the Michigan Court of Appeals found no problem with the increased sentence.

As previously noted, Petitioner picked up eight misconduct tickets in prison between his first and second trials. Fair-minded jurists could reasonably conclude that this information, which was not in the record at the time of the first sentencing, constitutes "objective information in the record justifying the increased sentence." *Goodwin,* 457 U.S. at 374, 102 S. Ct. at 2489; *see also Wasman v. United States*, 468 U.S. 559, 572, 104 S. Ct. 3217, 3225 (1984) (holding that after a retrial and conviction that follows a defendant's successful appeal, "a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings[]"). Moreover, fair-minded jurists could reasonably view this new information as rebutting the presumption of vindictiveness in Petitioner's case. *See Smith v.*

20

*English,* 90 F. App'x 14, 16-17 (3d Cir. 2003).  Accordingly, Petitioner is not entitled to habeas relief on his sentencing claims.

## C.     Petitioner's Remaining Claims

Respondent argues that Petitioner has procedurally defaulted his remaining claims[5] because he failed to properly exhaust these claims in the state courts prior to filing his habeas petition and no longer has an available state court remedy with which to exhaust these claims.

The doctrine of exhaustion of state remedies requires state prisoners to present their claims in the state courts before raising such claims in a federal habeas corpus petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).  The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process.  *Id.* at 845, 119 S. Ct. at 1732.  In Michigan, this means that that state prisoners must present the claims they intend to raise in a federal habeas petition to the Michigan Court of

---

[5] These claims include:

IV.     The prosecutor committed misconduct when she failed to preserve exculpatory evidence.

V.     Petitioner was denied the effective assistance of trial and appellate counsel which violated his constitutional rights.

VI.     Petitioner was improperly forced to wear identifiable prison clothing and ankle and wrist restraints at trial and in the presence of the jury.

Appeals and seek leave to appeal in the Michigan Supreme Court prior to seeking habeas relief.

Petitioner first raised his claims regarding his lack of access to potentially exculpatory evidence and the ineffectiveness of his trial counsel in his Standard 4 Supplemental Brief which he filed in the Michigan Court of Appeals on direct review. The Michigan Court of Appeals, however, declined to address either issue because Petitioner failed to present legal arguments in support of his unsupported factual allegations. *People v. Whaley*, No. 283712, 2009 WL 1693463 (Mich. Ct. App. June 16, 2009).

Petitioner raised all three grounds for relief in his post-conviction motion for relief from judgment. After the trial court denied Petitioner's motion for relief from judgment, Petitioner attempted to appeal the denial of that motion to the Michigan Court of Appeals. The Michigan Court of Appeals, however, dismissed Petitioner's post-conviction application for leave to appeal without prejudice, because Petitioner failed to file his application for leave to appeal in conformity with Michigan Court Rules 7.201(B)(3) and 7.216 (A)(10). This dismissal precludes a finding that Petitioner fairly presented his post-conviction claims to the Michigan Court of Appeals. *See, e.g.*, *Provenzano v. Singletary,* 3 F. Supp. 2d 1353, 1387 (M.D. Fla. 1997) (noting that a claim that has been raised in a brief or

pleading that has been stricken by a state court is not considered exhausted for purposes of habeas review).

Although the Michigan Court of Appeals dismissed Petitioner's defective application for leave to appeal without prejudice, Petitioner never attempted to re-file an application for leave to appeal in the Michigan Court of Appeals,[6] choosing instead to file an application for leave to appeal with the Michigan Supreme Court. The Michigan Supreme Court denied Petitioner's application. *People v. Whaley*, 493 Mich. 868, 821 N.W.2d 560 (2012) (unpublished table decision). Despite all the procedural maneuvering, Petitioner never properly presented his post-conviction claims to the Michigan Court of Appeals and his claims, therefore, are not properly before this Court.[7]

---

[6] Denial of a motion for relief from judgment is reviewable by the Michigan Court of Appeals and the Michigan Supreme Court upon the filing of an application for leave to appeal. Mich. Ct. Rs. 6.509, 7.203, 7.302; *see also Wagner v. Smith,* 581 F. 3d 410, 414 (6th Cir. 2009).

[7] The Court notes that the fact that Petitioner attempted to raise some claims on direct appeal in his Standard 4 Supplemental Brief is insufficient to exhaust his claims regarding the ineffectiveness of his trial counsel and his lack of access to allegedly exculpatory evidence for two reasons. First, as mentioned in the body of this Opinion and Order, *supra*, the Michigan Court of Appeals declined to review the claims contained in his Standard 4 Supplemental Brief because Petitioner did not present any legal argument. In Michigan, a party who seeks to raise an issue on appeal, but who fails to brief it, is considered to have abandoned the issue on appeal. *People v. Smith,* 439 Mich. 948, 948, 480 N.W.2d 908, 908 (1992) (citation omitted). Moreover, to exhaust a claim in state courts, federal habeas petitioners are required to present a federal constitutional issue "within the four corners" of his appellate brief. *See Castillo v. McFadden,* 399 F. 3d 993, 1000 (9th

A habeas petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules. *Coleman v. Mitchell,* 244 F. 3d 533, 538 (6th Cir. 2001). Thus, "[i]f the claims presented in the federal court were never actually presented to the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred." *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002) (quotation omitted). Unfortunately, no avenue exists at this juncture which would permit Petitioner to present his claims to the state courts and return to this Court to obtain a ruling on the merits of his claims. Pursuant to Michigan Court Rule 6.502(G)(1), a criminal defendant may only file one post-conviction motion for relief from judgment, which Petitioner has already done. *Gadomski v. Renico,* 258 F. App'x 781, 783 (6th Cir. 2007). Thus, the only possible avenue to obtain review on the merits is if Petitioner is able to show cause and prejudice.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless a petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or

---

Cir. 2005). Because Petitioner's claims were raised in only a conclusory fashion on direct appeal, the claims were not properly exhausted. Secondly, Petitioner did not raise any ineffective assistance of counsel claims in his application for leave to appeal to the Michigan Supreme Court on his direct appeal. A claim raised in the state court of appeals but not in the state supreme court cannot be considered in federal habeas review. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001). Petitioner thus did not properly exhaust what this Court has referred to has his "remaining claims" on either direct or post-conviction review.

can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-751, 111 S. Ct. 2546, 2565 (1991). If a petitioner fails to show cause for his procedural default, a court need not reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 2666 (1986).

Petitioner has offered no reasons to the Court to excuse the default. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Id.* Having procedurally defaulted his remaining claims, Petitioner is not entitled to habeas relief on any of the claims.

## IV.   CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. Title 28 U.S.C. § 2253 governs appeals in § 2254 proceedings and provides, in pertinent part: "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In explaining the meaning of a "substantial showing" necessary to receipt of a certificate of appealability the Supreme Court has explained that when a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner

25

demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). If a petitioner makes the requisite showing and a district court grants a certificate of appealability, the court must indicate the specific issue or issues for which the applicant made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3).

Because the Court denied all of the claims in Petitioner's petition for habeas corpus, it must make a determination on the certificate of appealability. For the reasons stated in this Opinion and Order, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue in this case. *Steele v. Withrow,* 157 F. Supp. 2d 734, 743 (E.D. Mich. 2001).

## V.    CONCLUSION AND ORDER

For the reasons stated above, Petitioner's application for writ of habeas corpus is **DENIED** and a certificate of appealability shall not issue.


Dated: October 3, 2013

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Kevin Whaley**, # 155829
Bellamy Creek Correctional Facility

1727 West Bluewater Highway
Ionia, MI 48846

**David H. Goodkin, A.A.G.**